### SCHUUR v. BERRY.

1. APPEAL AND ERROR—HEARING OF CHANCERY CASE DE NOVO.
   Although a chancery case is heard *de novo* on appeal, the determination of the lower court on disputed questions of fact will not be disturbed unless it is clear that a wrong conclusion has been reached.

2. EQUITY—RESCISSION—FRAUD—FINDING OF COURT—RECORD.
   Record on appeal from dismissal of bill for rescission of sale of stock in a beer distributing company and for other relief *held*, to disclose no reason for reversing finding of trial court, based upon defendant's version, that no fraud was established.

3. CORPORATIONS — DIRECTORS — OFFICERS — STOCKHOLDERS — FIDU-
CIARIES.

A fiduciary relationship *held*, not to exist between plaintiff and
defendant in suit to rescind sale of former's stock to latter
merely because former is a stockholder and latter is a director
and officer in the corporation nor because they had been friends
and business acquaintances.

4. SAME—SALE OF STOCK—FRAUD—CONCEALMENT.

Fraud *held*, not established in sale of plaintiff's stock to defend-
ant because of latter's alleged fraudulent misrepresentations
as to corporation's financial status, where defendant, even if
under duty to make a full disclosure because he was a director
and officer of the company, a friend and business acquaintance
of plaintiff, concealed nothing.

5. SAME—FRAUD—PROPHECY.

Purchaser of stock who was also a director and officer of the
company may not be held guilty of fraud for failure to
prophesy to plaintiff a phenomenal growth of the company
within a year after the transaction especially in the absence of
special circumstances within his knowledge which would ac-
count for it.

Appeal from Kalamazoo; Toms (Robert M.), J.,
presiding. Submitted June 8, 1938. (Docket No. 23,
Calendar No. 40,065). Decided October 3, 1938.
Rehearing denied November 10, 1938. Reconsidera-
tion denied December 22, 1938.

Bill by Reint P. Schuur against Walter S. Berry
to rescind the sale of stock, for an accounting, in-
junction, and other relief. Bill dismissed. Plaintiff
appeals. Affirmed.

*John H. Bloem,* for plaintiff.

*Joseph S. Folz (Harry C. Howard,* of counsel),
for defendant.

CHANDLER, J. Plaintiff is a practicing attorney,
having pursued his profession in the city of Kala-
mazoo since 1915. He became acquainted with de-

fendant, who had a sixth grade education, in 1925, both being members of the same lodge and the American Legion.

In the spring of 1931, defendant, having been discharged from his position as local manager of the Great Lakes Coca Cola Bottling Company, approached plaintiff with a plan to organize a company for the purpose of manufacturing and distributing soft drinks in Kalamazoo and vicinity. Plaintiff assisted in the organization of the proposed corporation which was known as Imperial Orange Crush Bottling Company, later known as the Imperial Beverage Company, having an authorized capital of $10,000 with the par value of the stock fixed at $10 per share. He purchased 50 shares of the stock and received in addition thereto seven shares in payment of his services in connection with the organization. Defendant was placed in charge as president and general manager. He was also a director.

During the first two years of the company's existence losses were sustained. With the repeal of prohibition in 1933, it was proposed that the company engage in the wholesale distribution of beer. Additional capital was needed to carry out this plan, which was supplied by some of the original stockholders, including plaintiff, subscribing to additional stock in an amount equal to 20 per cent. of their original subscriptions. Plaintiff then owned 67 shares of the 677 shares outstanding and defendant and his wife owned 210 shares, the balance being distributed among the eight remaining stockholders. The company immediately began to prosper from the time it commenced the distribution of beer, and which prosperity has continued in a constantly increasing measure to at least as late as the time of the institution of this suit.

On or about the 15th of February, 1935, plaintiff, after negotiations extending over a period of some 15 days, sold his stock to defendant. On December 10, 1936, he filed the bill of complaint herein to rescind the sale and for an accounting, claiming that he had been defrauded in that he had been induced to sell through the fraudulent misrepresentations and concealments of defendant relative to the financial condition of the company and the value of the stock made at the time of the sale. The trial court dismissed the bill of complaint and plaintiff has appealed.

Plaintiff bases his suit on the alleged ground that because of the long standing friendship and business relations existing between himself and defendant, and because defendant was president, general manager and a director of the company, the latter, in purchasing his stock, was bound to make a full and complete disclosure as to the value of the stock, and that his alleged failure to do so together with misrepresentations claimed to have been made in connection therewith, constitutes fraud entitling him to relief.

Passing the question as to whether a confidential or fiduciary relationship existed between the parties, we will consider the facts surrounding the sale of the stock and the events leading thereto. In so doing, we find the testimony and claims of the parties to be conflicting. Plaintiff claims that about the 1st day of February, 1935, defendant came to his office and after some conversation of a general nature asked plaintiff if he would sell his stock to him, stating that the business had no future and that "we are struggling along;" that because of competition, taxes, and operating and delivery expenses, the future prospects of the business were far from bright. In addition, it is claimed that de-

fendant expressed a desire to obtain control of the company so that his boys could eventually work into the business. It is further asserted by plaintiff that conversation of this type continued, during which defendant pictured a mediocre if not a dismal present and future for the company, finally representing the stock to be worth no more than par and that the two semi-annual dividends at four per cent. paid during the preceding year were paid merely because "we thought the stockholders ought to have something," but that it was very dubious whether the company could continue to do so.

It is plaintiff's contention that in purchasing the stock, it was the duty of defendant to disclose to him that immediately prior to the commencement of negotiations for the purchase, the sale of unissued stock had been closed by action of the board of directors, as well as the excellent financial condition of the company at that time, the net profit before deduction of Federal taxes being $1,965.73 for 1933, $4,341.89 less taxes of $729 for 1934 and $431.20 for January, 1935, the month preceding the sale. In 1935, the company made a net profit of $24,951.25 before deduction of the tax. Plaintiff asserts that had he known of all of these things and had defendant told the truth, he would not have sold his stock.

Defendant, on the contrary, relates a different story. He testified that he went to plaintiff's office on or about February 1, 1935, for the purpose of consulting plaintiff relative to a lease of an additional building for the company; that during the conversation he told plaintiff the company was in need of more trucks and that finally plaintiff said, "You ought to have my stock." Defendant says that plaintiff suggested the sale of the stock to him at par and that before deciding to buy he told plain-

tiff he would have to discuss the matter with his wife; that he returned a few days later and accepted plaintiff's offer, arranging to pay for the same at the rate of $40 per month. According to defendant, plaintiff asked him questions concerning the condition of the company, advising him that he should not misrepresent anything, to which plaintiff replied, "Well, I wouldn't have any reason to misrepresent anything to you. I wouldn't have any reason to lie to you, and if you don't believe what I have just told you, you can go over and look at the books, and that is what I would like to have you do."

Plaintiff was told that the company made between $3,000 and $4,000 during 1934; that the cash balance in the bank at the end of that year was in excess of $500 and numerous other questions were truthfully answered. Defendant testified:

"He asked me if the quarters that we were moving into were necessary in addition to what we already had. I told him yes. I told him we needed more room. Sure, I told him why we needed more room, the business was increasing. I did tell him then the business was increasing. I did not tell him by how much the business was increasing in volume, sales or money. As to per cent., whatever it might have been, I didn't know; I don't believe that I knew. I told him the business had increased over 1933."

Obviously, the question presented is primarily one of fact. The comments to be found in the opinion of the trial court indicate that the case was so treated by him and that he chose to adopt defendant's version of the transaction. Although the case is heard *de novo* on this appeal, the determination of the lower court on disputed questions of fact will not be disturbed unless it is clear that a wrong conclusion

has been reached. *Kuhlman* v. *Kuhlman,* 218 Mich. 685.

We have thoroughly reviewed the evidence and find no reason for reversing the decision of the trial court on the disputed facts relative to the sale and the surrounding circumstances. The trial court was convinced by defendant's testimony. According to that testimony, the sale was solicited by plaintiff who questioned him closely concerning the business and received substantially accurate replies thereto. Based upon this phase of the case, no fraud was established.

A fiduciary relationship did not exist between the parties merely because plaintiff was a stockholder and defendant a director and officer of the corporation. See *Walsh* v. *Goulden,* 130 Mich. 531. Neither do we think such a relationship arose by reason of the additional facts that they had been friends and business acquaintances. However, even were we to assume that the doctrine of *Poole* v. *Camden,* 79 W. Va. 310 (92 S. E. 454, L. R. A. 1917 E, 988), as quoted in *Buckley* v. *Buckley,* 230 Mich. 504, became applicable because plaintiff questioned defendant concerning the condition and affairs of the company, a case of fraud would not be established on the ground that defendant failed to satisfy an existing duty to make a full disclosure for we find that nothing was concealed.

According to defendant, plaintiff was told that the business was increasing and that the company had made between $3,000 and $4,000 during the year 1934. Plaintiff also knew that he had received a dividend during that year. From these facts alone he should have known that the financial status of the company was considerably improved over that which prevailed in the early days of its existence. It is

apparent that defendant did not visualize the phenomenal prosperity which was to be enjoyed, particularly subsequent to the sale of the stock. Of course, fraud could not be predicated upon defendant's failure to prophesy these future events and impart his prophecy to plaintiff, especially in the absence of special circumstances within his knowledge which would account for the remarkable financial gains.

Decree affirmed, with costs to defendant.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred. BUTZEL, J., took no part in this decision.