ESTATE OF Aileen Copley TOWNES, Deceased, John Charles Townes, IV, and Susan Townes Parker, Successor Independent Co–Administrators With Will Annexed of the Estate of Aileen Copley Townes, Deceased, Appellants,

v.

Donna Lou TOWNES, Independent Executrix of the Estate of William Michael Townes, Deceased, Donna Lou Townes, Individually, Jerry S. Payne, Individually, and Payne & Associates, Appellees.

No. C14–92–01011–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 23, 1993.

Rehearing Denied Jan. 27, 1994.

Loyd H. Wright, Houston, for appellants.

Robert K. Loper, Jerry S. Payne, Houston, for appellees.

Before ROBERTSON and CANNON, JJ., and ROBERT E. MORSE, Jr., Former Justice.

### MAJORITY OPINION

ROBERTSON, Justice.

This is an appeal from a take nothing judgment entered in favor of appellees on appellants' claims of breach of fiduciary duty

and conversion. Appellants bring eight points of error challenging the sufficiency of the evidence supporting the jury's findings on liability, challenging the trial court's refusal to submit a jury issue on their claim of unjust enrichment, and challenging the trial court's admission of certain evidence. We reverse and remand.

Aileen C. Townes had five children: Aileen Townes McHenry, John Charles Townes IV, Susan Townes Parker, William Michael Townes, and George Copley Townes (who died in 1966). Aileen Townes was the primary beneficiary of her husband's estate. After the death of her husband, Aileen Townes' brother, George Copley, assisted with the management of her financial affairs until his death. Testimony indicated that Aileen Townes did not compensate her brother for his assistance. Upon George Copley's death, Aileen Townes' son, Michael Townes began assisting in the management of her financial affairs.

In 1985, the "Aileen C. Townes Special Account" was opened at First Interstate Bank. Although both Aileen Townes and Michael Townes were signatories on this account, the funds in this account belonged to Aileen Townes. Michael Townes also possessed the authority to write checks on his mother's Merrill Lynch Cash Management Account. The funds in this account also belonged to Aileen Townes. From 1985–89, Michael Townes made the following withdrawals from Aileen Townes' accounts and deposited the funds in his own account or used the funds to his benefit: $60,598.60 in 1985–86; $100,410.50 in 1987; $80,000.00 in 1988; and $200,787.40 in 1989. All of the withdrawals, except the last one, were from the special account. In September 1989, Aileen Townes lapsed into a coma and later died. The last withdrawal by Michael Townes, of $83,650.00 from the Merrill Lynch account, occurred while his mother was in a coma.

Michael Townes was appointed the executor of Aileen Townes' estate. From 1985–90, Michael Townes had a serious heart condition, of which his mother had been aware. In April 1990, Michael Townes died of a heart attack. The individual appellants were then appointed as Successor Independent Co–Administrators. Under the terms of Michael Townes' will, his wife Donna was appointed independent executrix of Michael's estate. Michael Townes left his entire estate to his wife, Donna.

The estate of Aileen Townes had an approximate fair market value of $1,200,000.00. The following represents the approximate distributions from this estate: Appellant, Charles Townes—$431,095.00; Appellant, Susan Parker—$431,095.00; George Copley Townes (Michael's son)—$215,547.00; Elizabeth Brandt (Michael's daughter)—$215,-547.00; and Aileen McHenry—$1,000.00. Aileen McHenry testified that she received only $1,000.00 under her mother's will because her uncle, George Copley, had left her his entire estate.

The E.E. Townes Trust Number 4, of which Aileen Townes was the beneficiary, terminated upon her death. Under the terms of that trust, it was to be distributed in equal portions to the following four persons: Charles Townes, Susan Parker, Aileen McHenry, and Michael Townes. The value of this trust is approximately $3,052,532 to $4,117,325.60. Each of the four individuals will receive approximately $763,133 to $1,029,331.30.

Donna Townes, widow of Michael Townes, testified that she did not have any involvement in Michael's financial business. Donna claimed that she never saw any of the checks Michael withdrew from his mother's account and she never signed or endorsed them for deposit. Donna also testified that, while Michael was in the hospital, appellant, Charles Townes requested all of the paperwork regarding Aileen Townes' estate. Donna refused to respond to those requests at that time. After Michael's death, Donna collected all of the paperwork and gave it to her attorney, who in turn, made them available to appellants.

Upon reviewing the documentation, appellants learned of Michael's withdrawals from their mother's accounts from 1985–89. Appellants then filed this suit, alleging breach of fiduciary duty, conversion, fraud, and unjust enrichment. Appellants sought the im-

---

**417**

position of a constructive trust and sought actual damages of $400,000.00 and punitive damages of not less than $1,200,000.00. The case went to the jury only on the issues of breach of fiduciary duty and conversion. The jury found no liability on the part of Michael Townes and the trial court entered a judgment dismissing appellants' claims with prejudice.

In points of error one and two, appellants claim there was legally and factually insufficient evidence to support the jury's finding that Michael Townes did not breach his fiduciary duties to Aileen Townes. Where a party challenges the legal sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). In reviewing a matter of law challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* at 690. If there is no evidence to support the finding, we must then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* If a party is attacking the factual sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Hickey v. Couchman,* 797 S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990, writ denied). In reviewing such a challenge, we must examine the entire record to determine if there is some evidence to support the finding, if the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or if the great preponderance of the evidence supports its nonexistence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Whether the great weight challenge is to a finding or a nonfinding, we may reverse and remand a case for a new trial if we conclude the jury finding or nonfinding is against the great weight and preponderance of the evidence. *See Ames v. Ames,* 776 S.W.2d 154, 158 (Tex.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990).

The parties stipulated that Michael Townes occupied a fiduciary relationship with his mother regarding her estate. When persons enter into fiduciary relations, each consents as a matter of law to have his conduct measured by "the standards of the finer loyalties exacted by courts of equity." *Sorrell v. Elsey,* 748 S.W.2d 584, 585 (Tex.App.—San Antonio 1988, writ denied) (quoting *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786, 788 (1938)). Even in the case of a gift between parties with a fiduciary relationship, "equity indulges the presumption of unfairness and invalidity, and requires proof at the hand of the party claiming validity . . . of the transaction that it is fair and reasonable." *Sorrell,* 748 S.W.2d at 585. The fiduciary must show that the transaction was "fair, honest, and equitable." *Miller v. Miller,* 700 S.W.2d 941, 947 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). In establishing the fairness of a transaction involving a fiduciary, some of the most important factors are: (1) whether there was full disclosure regarding the transaction, (2) whether the consideration (if any) was adequate, and (3) whether the beneficiary had the benefit of independent advice. *Id.* Another crucial inquiry is whether the fiduciary has benefited at the expense of the beneficiary. *Id.* The transaction is unfair if the fiduciary significantly benefits from it as viewed in light of *circumstances existing at the time of the transaction. Id.*

Because the parties stipulated to the existence of a fiduciary relationship and that Michael withdrew funds from his mother's account, the burden was on appellees to rebut the presumption that Michael's transactions were unfair. Appellees contend the following evidence supports the jury's finding that Michael Townes did not breach his fiduciary duty: Aileen Townes was very generous to her family. During the years in question, Aileen Townes gave appellant, Charles Townes and his family approximately $148,-000.00, and gave appellant, Susan Parker and her family approximately $101,000.00. The parties stipulated that Aileen Townes had a close relationship with her son, Michael, and was aware of his health problems. Michael Townes lived close to Aileen, visited her of-

ten, and spoke with her several times a day. Testimony also indicated that Aileen Townes was alert and aware of her financial condition until her death. Although appellant Charles Townes testified that Michael's lifestyle improved after he began managing Aileen Townes' estate, other testimony indicated that Michael and Donna Townes lived an average lifestyle. They did purchase at least one automobile and they took some trips, but Donna Townes testified that these trips were taken with Aileen's knowledge and were not expensive trips.

The testimony of Timothy Winata, an expert witness CPA called by appellees, concerned Winata's review of the documentation while making the following assumptions of fact: (1) that Michael Townes was a law-abiding and honest individual; (2) that Aileen Townes made gifts to her children and her children's families; (3) that Michael Townes assisted his mother with all her financial affairs; and (4) that there was an agreement or arrangement between Michael Townes and his mother for compensation of Michael for his services. Winata classified some of the funds withdrawn by Michael as gifts because those funds were used to purchase automobiles and Aileen Townes had made transfers to other family members for the purchase of vehicles. Winata also classified the checks to Donna Townes as gifts. The remaining amount Winata classified as compensation for Michael's management of his mother's financial affairs. This amount constituted 51.9% of the income growth of Aileen's accounts. Based on his analysis and on the assumptions of fact, Winata concluded that the "most probable agreement between Michael Townes and his mother for the compensation to Michael Townes for handling her financial affairs was that Michael Townes and his mother would divide on an equal basis all the income and growth he derived from the investment portfolio for the years in question."

We do not find that this evidence establishes any of the factors important in rebutting the presumption that Michael's withdrawals from Aileen's account were unfair. Appellants contend that the following evidence establishes breach of fiduciary duty as a matter of law: The parties stipulated that Aileen's handwriting did not appear on any of the checks written or withdrawals made by Michael. Indeed, the parties stipulated that Michael signed all of such checks or withdrawals. Although Aileen received duplicate statements regarding the Merrill Lynch account, only Michael received account statements regarding the special account. All of Michael's withdrawals except for the last one came from the special account, for which Aileen received no account statements. The final check written by Michael Townes came from the Merrill Lynch account. Although Aileen Townes received statements from this account and thus, ordinarily would have been apprised of the withdrawal, this particular withdrawal of $83,650.00, occurred while Aileen was in a coma from which she never recovered.

Morris Bosak, an accountant who had dealt with Michael Townes, testified that Michael did not use proper accounting methods. Bosak's review of the documents revealed no evidence that Michael was paid compensation for his services. Bosak further testified that, during Michael's management, the estate lost approximately $30,000.00. Based on his experience regarding fair and reasonable compensation of a fiduciary or trustee, the amount of funds Michael withdrew was excessive as compensation.

Our review of this evidence shows that there was no evidence Aileen received independent advice regarding the transactions. The evidence clearly shows that Michael Townes benefitted from the withdrawals at Aileen's expense, and that there was not full disclosure. Aileen did not receive any account statements reflecting the withdrawals made while she was in good health and the last withdrawal, taken from an account for which Aileen ordinarily would have received a statement, was taken while Aileen was in a coma. We find that this evidence establishes that appellees did not rebut the presumption of unfairness of these transactions and that the evidence conclusively establishes that Michael Townes breached his fiduciary duty. Therefore, the trial court erred in overruling appellants' motion for JNOV and in entering judgment in favor of appellees as to breach

of fiduciary duty. We sustain point of error one. Having sustained point of error one, we need not address point of error two.

In points of error three and four, appellants claim there was no evidence or insufficient evidence of the existence or terms of any agreement between Aileen Townes and Michael Townes. Because appellants did not have the burden of proof on this issue, they must demonstrate on appeal that there is no evidence to support the jury's finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). We may consider only the evidence and inferences that tend to support the finding, disregarding all contrary evidence and inferences. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). Where a party challenges the factual sufficiency of the evidence supporting an adverse finding on which he did not have the burden of proof, he must demonstrate there is insufficient evidence to support the adverse finding. *See Hickey v. Couchman,* 797 S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990, writ denied). In reviewing such a challenge, we must consider all of the evidence and set aside the verdict only if the evidence standing alone is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ Jury question 2 asked if, and the jury so found, that the withdrawals made by Michael Townes from his mother's accounts were within the scope of an agreement between Michael Townes and his mother. The alleged agreement between Aileen Townes and Michael Townes was not an express agreement. An implied contract arises when circumstances disclose that, according to the ordinary course of dealing and the common understanding, there was a mutual intent to contract. *City of Houston v. First City,* 827 S.W.2d 462, 473 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Express language is not essential to a promise; conduct may convey an objective assent. *Id.* The only difference between express contracts and implied contracts is the character and manner

of proof required to establish mutual assent, and whether mutual assent existed is a question of fact for the jury. *See id.*

■ The only evidence relating to an agreement between Aileen Townes and Michael Townes was a statement by Michael's sister that their mother would have wanted to compensate Michael, and the testimony of expert witness, Timothy Winata. The testimony of Winata, however, was based on the assumption that an agreement existed. Winata did not determine if an agreement existed. Instead, he assumed one existed and then attempted to determine the terms of that agreement. Morris Bosak, another expert witness who reviewed the financial documents, testified that there was no documentary evidence indicating an agreement to compensate Michael. We find that the evidence supporting the jury's finding of an agreement is so weak as to do no more than create a mere surmise or suspicion of the existence of an agreement and therefore, this evidence is no more than a scintilla and, is in legal effect, no evidence. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983). Having found no evidence to support the jury's finding of an implied agreement between Aileen and Michael Townes, we sustain point of error three. We need not address point of error four.

■ In points of error five and six, appellants challenge the legal and factual sufficiency of the jury's findings that Michael and Donna Townes did not convert funds belonging to Aileen Townes. Conversion consists of the wrongful exercise of dominion or control over another's property in denial or inconsistent with the other's rights in that property. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 446 (Tex.1971). Money is subject to conversion only when it can be described or identified as a specific chattel, and not where an indebtedness may be discharged by the payment of money generally. *Wheat v. American Title Ins. Co.,* 751 S.W.2d 943, 944 n. 1 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Crenshaw v. Swenson,* 611 S.W.2d 886, 891 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). An action for conversion of money will lie where the money is "(1) delivered for safe keeping; (2) intended to be

kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *Edlund v. Bounds,* 842 S.W.2d 719, 727 (Tex.App.—Dallas 1992, writ denied).

Our review of the evidence supporting the jury's finding of conversion reveals no evidence showing that Aileen consented or agreed to all of the withdrawals and no evidence that Michael had a title claim to any of the funds. Thus, we must review all of the evidence to determine whether the evidence established conversion as a matter of law.

The parties stipulated that Michael Townes managed his mother's financial affairs and her investment portfolio. The parties also stipulated that, although Michael was authorized to sign checks on the two accounts, all of the funds deposited and all the income or appreciation from those funds belonged to Aileen Townes. Finally, the parties stipulated that Michael Townes wrote checks to himself or to family members from Aileen's accounts totalling more than $400,000.00. There is no evidence of an agreement between Michael and Aileen Townes regarding the withdrawal of funds and Michael, not Aileen, received the account statements from the special account, from which all but the last withdrawal were made. As previously mentioned, the last withdrawal was from the Merrill Lynch account, and although Aileen received statements regarding this account, this withdrawal of $83,650.00 occurred while Aileen was in a coma.

This evidence establishes that the funds in the accounts were in Michael's care for safe keeping and that these funds were intended to be kept segregated as an intact fund. The evidence further shows that Michael wrote checks or made withdrawals from these accounts in the amount of $441,796.50. The evidence does not show that Aileen consented or agreed to the withdrawals or that she was even aware of all of the withdrawals. Furthermore, the funds were not the subject of a title claim by Michael Townes. Thus, we hold that the evidence conclusively establishes that Michael Townes committed conversion by withdrawing sums from Aileen's account.

As to Donna Townes, however, we find the evidence supports the jury's finding that she did not commit conversion. The evidence showed that Donna did not know of Michael's involvement with his mother's financial affairs until the time of Aileen's final illness in September 1989. Donna testified that Michael never discussed any financial decisions with her and never let her make any deposits into the checking account. No evidence contradicted Donna's testimony regarding her lack of involvement. Thus, we find no evidence of the elements of an action for conversion of money with respect to Donna. We sustain point of error five insofar as it relates to Michael. We overrule point of error five with respect to Donna. Based on our ruling on point of error five, we need not address point of error six challenging the factual sufficiency of the evidence supporting the jury findings of conversion.

In point of error seven, appellants claim the trial court erred in refusing to submit jury questions on unjust enrichment. Having sustained points of error one, three, and five, we need not address this point of error.

In point of error eight, appellants contend the trial court erred in allowing into evidence both the testimony and the written report of Tim Winata because such testimony and report were premised entirely upon facts not in evidence, were wholly speculative and not probable. Having sustained points of error one, three, and five, we need not address this point.

We reverse the judgment of the trial court and remand the cause for proceedings in accordance with this opinion.

**ROBERT E. MORSE, Jr.,** Former Justice, dissenting.

I respectfully dissent. I would not reverse and remand this action. Rather, I would affirm the judgment in favor of Michael's Estate as to all of Michael's alleged misappropriations except the $83,650 withdrawal from the cash management account (CMA). As to the latter, I would reverse and render judgment for $83,650 against Michael's Estate.

## I. Perspective

Two main considerations influence my dissent. The first is my concern regarding the imposition of a presumption of unfairness on Michael's Estate under the circumstances of this case, i.e., where both the fiduciary and beneficiary are deceased and where the terms of the fiduciary relationship and communications between the two were largely secret and unmemorialized. The second is my belief that this court should look behind the jury's answer to a broad-form question and identify the necessarily implied findings. Then, where possible with fairness to the parties, we should sever the cause as appropriate and tailor our judgment in the interest of justice and judicial economy.

### A. Presumption of Unfairness

A rebuttable presumption of unfairness arises regarding a transaction between a fiduciary and beneficiary when the plaintiff shows (1) a fiduciary relationship, and (2) an advantage gained by the fiduciary at the expense of the beneficiary. *See Miller v. Miller*, 700 S.W.2d 941, 946 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). The fiduciary defendant must rebut the presumption to get the issue to the jury. This requires the offering of some evidence of fairness, i.e., more than a scintilla of evidence, such as would support a jury finding. However, under the circumstances of this case, I would not make that presumption an insurmountable barrier. That is, where the two persons in the best position to provide evidence on the allegations at hand, Michael and Aileen, are deceased, I would at least recognize the necessarily circumstantial nature of Michael's Estate's evidence and give it a full and fair reading. Otherwise, the danger exists of imposing on Michael's Estate an unfair, or even impossible, burden of proof.

### B. Jury Findings

Aileen's Estate alleged that Michael breached his fiduciary duty to Aileen by (1) making unauthorized withdrawals from the Special Account from 1985 to 1989, and (2) making an unauthorized withdrawal from the CMA account on September 5, 1989. The jury was asked the broad-form question, "Do you find from the preponderance of the evidence that Michael Townes did not breach his fiduciary duties to his mother, Aileen Copley Townes?." The jury answered, "He did not breach his fiduciary duties." This answer was necessarily based on, and contained, "implied" findings that (1) Michael did not breach his fiduciary duty with regard to the Special Account withdrawals and (2) he did not breach his fiduciary duty as to the CMA account withdrawal.

Also, the trial court presented the jury with the broad-form questions, "Do you find from a preponderance of the evidence that Michael Townes converted funds belonging to Aileen Townes?" and "Do you find from a preponderance of the evidence that Donna Townes converted funds belonging to Aileen Townes?." The jury answered both questions "We do not." These answers necessarily were based on, and contained, "implied" findings that (1) Michael did not convert funds from the Special Account, (2) Michael did not convert funds from the CMA account, (3) Donna did not convert funds from the Special Account, and (4) Donna did not convert funds from the CMA account.

In a bench trial, "[t]he legal and factual sufficiency of the implied findings may be challenged on appeal, and the applicable standard of review is the same as applied in the review of jury findings or a trial court's findings of fact." *Forscan Corp. v. Dresser Indus.*, 789 S.W.2d 389, 394 (Tex.App.—Houston [14th Dist.] 1990, writ denied). In an era of broad-form jury questions, I see no harm and much benefit in our separately addressing implied jury findings in a similar manner. In the interest of justice and judicial economy, we can then finalize and render judgment wherever possible with fairness to the parties.

In my opinion, Michael's numerous withdrawals from the Special Account spread over a four-year period are clearly distinguishable from the single, very large withdrawal from the CMA account. The former were taken while Aileen was alive and in control of her faculties and from an account that Aileen had equal access. The latter was taken when Aileen was in a coma, near death, and from an account Michael would lose ac-

cess to upon her death. Where separate disposition of matters in dispute is possible, as in the present case, it wastes judicial resources to unnecessarily remand an entire case for a retrial.

In *International Bankers Life Inc. Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963), a corporation sued corporate officers and directors for fraud and conspiracy. Separate claims and transactions involved (1) personal profit by defendants on purchase by corporation of land, (2) receipt of commissions on sales to public of stock issue, (3) conversion of corporate funds, and (4) profits realized from the sale of personal stock in competition with sale of corporation's stock. *Id.* at 572. The case was presented to the jury by means of segregated special issues tracking each of these transactions. *Id.* at 570. The corporation won and defendants appealed, the case eventually reaching the Texas Supreme Court. In disposing of the appeal, the Court held that the issues involved in the separate claims and transactions were separable. Accordingly, the Court severed into one cause the claims related to the land purchase, the commissions, and the conversion; into another cause, the personal stock sale. *Id.* at 572.

With respect to the first restructured cause, the Court reversed the Court of Appeals and affirmed the trial court. As to the second cause, the Court reversed both the Court of Appeals and the trial court and remanded the cause for a new trial. The Court explained itself:

> Plaintiff's suit involved one controversy between the parties but asserted separate claims against the defendants growing out of separate transactions. Each of the claims was based on a severable part of the controversy and a judgment on one would not be res judicata of the other. The situation is one where justice is done by the affirmance of the judgment as to severable issues fairly tried since they are sufficiently independent of the issues improperly tried so as not to prejudice the rights of either party.

*Id.* at 572, citing *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 398 (1945).

In the present case, Aileen's Estate did not submit separate issues to the jury for the withdrawals from the Special Account and for the withdrawal from the CMA account. Nowadays, special issues are disfavored in view of Rule 277's admonition to submit broad-form jury questions whenever possible. TEX.R.CIV.P. 277. However, (1) when the jury's answer to a broad-form question yields an indisputable set of implied findings, (2) when the plaintiff's cause can be severed without prejudice to the parties, and (3) when such severance enables an appellate court to efficiently dispose of the matters in controversy or at least simplify the remaining issues to be resolved, then I believe that the approach taken in *Holloway* applies even where the jury's findings are implied, not express.

*Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257 (Tex.1974) is another case where the Court separately addressed each transaction of a series of transactions involving claimed breaches of fiduciary duty. In *Swenson*, the trial court, upon a jury verdict, entered judgment (1) denying recovery by the beneficiaries of an initial cash contribution to a museum, but setting aside (2) a second cash contribution, (3) a conveyance of a 1761–acre tract of land, (4) a conveyance of a 5777–acre tract, and (5) a trust associated with the 5777–acre tract. *Id.* at 259. The court of appeals affirmed. The Texas Supreme Court affirmed the upholding of the first cash contribution and the setting aside of the 1761–acre conveyance. But the Court severed the claim to set aside the second cash contribution and the claim to set aside the conveyance of the 5777–acre tract and its related trust, and remanded those claims to the trial court for a new trial. *Id.* at 262. Whereas the transactions in *Swenson* were put to the jury as separate special issues, I see no reason, in principle, why necessarily implied jury findings cannot be handled in a similar manner.

## II.  Discussion

### Point 1

In point one, Aileen's Estate complains that the trial court erred in overruling its motion for JNOV and entering judgment in favor of Michael's Estate, because there was

no evidence to support the jury's finding that Michael did not breach his fiduciary duties to Aileen.

The majority held that Michael's Estate did not rebut the presumption of unfairness. This holding was sufficient to sustain point of error one. The majority additionally held that the evidence conclusively proved Michael's breach of fiduciary duty. I would sustain the point of error in part, and overrule in part.

Several factors may be considered in determining whether a fiduciary defendant successfully rebutted the presumption of unfairness: (1) whether the fiduciary made reasonable use of the confidence placed in him by the beneficiary, (2) whether the transaction was ultimately fair and equitable, (3) whether the fiduciary made a good faith effort to fully inform the beneficiary of the nature and effect of the transaction, and (4) whether the beneficiary had the benefit of independent advice. *See Sorrell v. Elsey,* 748 S.W.2d 584, 586 (Tex.App.—San Antonio 1988, writ denied) [factors (1) thru (3) ] and *Miller, supra* at 949 [factor (4) ].

### The CMA Account Withdrawal

I agree with the majority in so far it holds that Michael's Estate failed to meet its burden of production as to his withdrawal from the CMA account. At the time of that transaction, Aileen was in a coma. There was no evidence that Aileen could have been aware of that withdrawal, much less fully informed or afforded independent advice. Nor was there any evidence that the withdrawal was fair and equitable or a reasonable use of the confidence placed in Michael. There was testimony hypothesizing that the withdrawal was made in compliance with specific terms of an agreement between Michael and Aileen. But such testimony was based on facts not in evidence, was rank speculation, and should not have been admitted into evidence. I agree that the trial court's ruling on Aileen's Estate's motion for JNOV was in error to the extent that it denied Aileen's Estate a judgment with respect to Michael's withdrawal from the CMA account.

### The Special Account Withdrawals

However, I would hold that Michael's Estate met its burden of production as to the withdrawals from the Special Account. There was some evidence, albeit circumstantial, that Michael and Aileen had an "agreement" or understanding whereby Michael was permitted to take funds from the special account for his personal use. For example: (1) Michael was especially close to Aileen, (2) they lived nearby and communicated several times a day, (3) she made him a co-signatory party to the Special Account without any express reservation, (4) Aileen was of sound mind and generally kept track of her financial and business affairs, (5) Michael was dying of heart disease and Aileen knew it, and (6) Michael was responsible to Aileen for the management of over a $1,000,000 portfolio. Recognizing Michael's Estate's necessary reliance on circumstantial evidence, I would hold that the evidence was sufficient to rebut the presumption of unfairness. Moreover, I do not agree with the apparent conclusion of the majority that Aileen's Estate's evidence otherwise conclusively established that Michael breached his fiduciary duty as to the Special Account withdrawals. Therefore, I would hold that the trial court's ruling on the motion for JNOV was not in error to the extent that it denied Aileen's Estate a judgment with respect to Michael's withdrawals from the Special Account.

I would sustain point of error one in part (as to the CMA withdrawal), and overrule in part (as to the Special Account withdrawals).

### Remand or Render?

Having sustained Aileen's Estate point one as to the CMA account withdrawal, I would render judgment against Michael's Estate for the $83,650 amount of that withdrawal.

My rationale for rendering rather than remanding follows:

**Rule 81. Reversal in Civil and Criminal Cases**

    \*      \*      \*      \*      \*      \*

  **(b) Reversible Error**

    (1) *Civil Cases.*

    ... [I]f it appears ... that the error affects a part only of the matter in con-

troversy and that such part is clearly separable without unfairness to the parties, the judgment shall only be reversed and a new trial ordered as to that part affected by such error, provided that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested.

\* \* \* \* \* \*

**(c) Rendition Appropriate Unless Remand Necessary.**

When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary to remand to the court below for further proceedings.

TEX.R.APP.P. 81.

With error in the failure to give an instructed verdict, it becomes our duty to render the judgment that the trial court should have rendered. *See Franklin Life Ins. Co. v. Faggard,* 296 S.W.2d 335, 339 (Tex.Civ. App.—San Antonio 1956, writ ref'd n.r.e.).

The issues were fully developed at trial. Michael's Estate failed to offer more than a scintilla of evidence to overcome the presumption of unfairness. Judgment NOV was proper against Michael's Estate as to the withdrawal from the CMA account. I would render judgment against Michael's Estate as to the CMA withdrawal and order the trial court to enter judgment in favor of Aileen's Estate for the amount of that withdrawal ($83,650) plus pre-judgment interest.

Finding no liability against Michael's Estate or Donna, the jury did not need to answer the submitted jury questions on exemplary damages. Under my disposition of the case, I need not remand merely to permit the jury to answer these questions. First, the jury instructions stated that malice was not a required element of exemplary damages when there was an "intentional breach" of fiduciary duty. Apparently, the trial court required only a finding of *knowing and intentional* breach of fiduciary duty. But such knowledge and intent may not be supplied by inference from the presumption of unfairness, and I find no other evidence that Mi-

chael knowingly or intentionally committed any breach of his fiduciary duty.

Second, the statutory expression of public policy is that, "[e]xemplary damages may be awarded only if the claimant proves that the personal injury, property damage, death, or other harm ... results from (1) fraud; (2) malice; or (3) gross negligence." TEX.CIV. PRAC. & REM.CODE ANN. § 41.003(a) (Vernon Supp.1993) (effective September 2, 1987); *see McLendon v. McLendon,* 862 S.W.2d 662, 671 (Tex.App.—Dallas 1993, n.r.h.) (Chapter 41 applies to breach of fiduciary duty); *but see Transfer Products, Inc. v. Texpar Energy, Inc.,* 788 S.W.2d 713, 717 (Tex.App.— Corpus Christi 1990, no writ) (Chapter 41 does not apply to conversion).

The burden of proof on exemplaries "may not be shifted to the defendant...." TEX. CIV.PRAC. & REM.CODE ANN. § 41.003(b). Therefore, even though a presumption of unfairness operated to place the burden of production on Michael's Estate with respect to Michael's alleged breach of fiduciary duty, no presumption operated against Michael's Estate as to the justification for punitive damages. The burden of proof for punitives rests squarely with the plaintiff, Aileen's Estate.

Gross negligence is an inappropriate basis for punitives in the present case. For purposes of Chapter 41, "Fraud" means actual fraud, not constructive fraud. *Id.* § 41.-001(4). "Malice" means conduct that is specifically intended to cause substantial injury or an act carried out with a flagrant disregard for the rights of others and with actual awareness that the act will, in reasonable probability, result in human death, great bodily harm, or property damage. *Id.* § 41.-001(6). I find no evidence in the record of fraud or malice as those terms are defined in § 41.001. The lack of explanation by the deceased fiduciary does not require or justify the imposition of punitive damages on Michael's Estate. Therefore, no remand for further consideration of such issue is necessary.

In sum, I would sustain point one to the extent that the trial court erred in denying Aileen's Estate's motion for JNOV as to the

CMA withdrawal. As to that transaction, I would render judgment if favor of Aileen's Estate on liability and actual damages. I would affirm the trial court's denial of Aileen's Estate's motion for JNOV as to the Special Account withdrawals.

### Point 2

In point two, Aileen's Estate complains that the trial court erred in entering judgment in favor of Michael's Estate and in overruling Aileen's Estate's motion for new trial, because there was factually insufficient evidence to support the jury's finding that Michael did not breach his fiduciary duties to Aileen.

The majority did not address this point since it held in point one that Aileen's Estate proved Michael's breach of fiduciary duty as a matter of law. As discussed under point of error one, I would render judgment for Aileen's Estate on the matter of Michael's withdrawal from the CMA account. Therefore, I need only address point of error two as to the sufficiency of the evidence to support the jury's implied finding of no breach of fiduciary duty as to the Special Account withdrawals.

I cannot agree with the majority that the evidence established Michael's breach of duty as a matter of law with respect to these transactions. Michael's Estate's evidence of the course of dealings, habits, and surrounding circumstances concerning the Townes' intrafamilial transactions raises a fact issue on the issues relevant to establishing a breach of fiduciary duty. I cannot hold, as does the majority, that there was no more than a scintilla of evidence that Michael did not breach his fiduciary duty to Aileen with respect to the Special Account withdrawals. Moreover, considering the circumstantial nature of the evidence on both sides, I would hold that the evidence of no breach as to those transactions was not so weak that the jury's verdict was manifestly unfair or unjust.

In sum, my disposition of the matter of the CMA withdrawal under point one moots this point of error as to that transaction. I would affirm the trial court's denial of Aileen's Estate's motion for new trial and affirm the jury verdict as to the Special Account withdrawals.

### Point 5

In point five, Aileen's Estate argues that the trial court erred in overruling its motion for JNOV and in entering judgment in favor of Michael's Estate and Donna, because the evidence conclusively proved that Michael and Donna converted funds belonging to Aileen.

The majority holds that there was no evidence that Aileen consented or agreed to all of the withdrawals. They then hold that the evidence conclusively establishes that Michael converted funds belonging to Aileen. However, the burden of production and persuasion for conversion rests with the plaintiff, Aileen's Estate. The burden was on Aileen's Estate to prove *lack of* consent, not on Michael's Estate to prove consent. *See American Mortgage Corp. v. Wyman*, 41 S.W.2d 270, 272 (Tex.Civ.App.—Austin 1931, no writ).

I cannot agree with the majority that Aileen's Estate established as a matter of law that Michael and Donna converted Aileen's funds from the Special Account. There is no evidence affirmatively establishing *lack of* consent except with regard to the withdrawal from the CMA account where there was evidence that Aileen was in a coma. I would overrule this point of error as to the withdrawals from the Special Account. The point is moot with regard to the CMA withdrawal.

### Point 6

In point six, Aileen's Estate contends that the trial court erred in entering judgment in favor of Michael's Estate and Donna and in overruling its motion for new trial, because the jury's finding that Michael and Donna did not convert funds belonging to Aileen was against the great weight and preponderance of the evidence.

The majority did not need to address this point. Given my ruling under point one, point six is moot as to the withdrawal from the CMA account. As to the Special Account withdrawals, I would hold that the jury's verdict was not so against the great weight

and preponderance of the evidence as to be manifestly unfair or unjust. As I stated under point five, the burden was on Aileen's Estate to prove *lack of* consent and there was little if any evidence affirmatively establishing that element of Aileen's Estate's conversion claim. I would overrule point six.

### Points 3 & 4

In point three, Aileen's Estate contends that the trial court erred in overruling its motion for JNOV and in entering judgment in favor of Michael's Estate, because there was no evidence to support the jury's finding that Michael's payments to himself were within the scope of an agreement with Aileen. In point four, Aileen's Estate maintains that the trial court erred in entering judgment in favor of Michael's Estate and in overruling its motion for new trial, because there was factually insufficient evidence to support the jury's finding that Michael's payments to himself were within the scope of an agreement with Aileen.

The jury was asked the question, "Do you find from a preponderance of the evidence that all of the withdrawals made by Michael Townes from his mother's accounts were within the scope of an agreement between Michael Townes and his mother?." The jury answered, "Yes." The majority held that there was no evidence of an implied agreement between Michael and Aileen and sustained point four. It therefore did not need to reach point five. I would hold that this jury question is cumulative and not independently dispositive of whether a JNOV or new trial should have been granted. The concept of agreement or consent is inherent in the jury question on breach of fiduciary duty and its accompanying instruction: "A fiduciary may not use the relationship to benefit his personal interest, except with the *full knowledge and consent* of his principal." The concept of agreement or consent is also inherent in the conversion questions as bearing on Aileen's Estate's burden to prove lack of consent. In other words, the jury's answer to this "agreement" question gives us insight into the jury's thinking, but is not dispositive of the ultimate issues of breach of fiduciary duty or conversion. A jury finding that

there was no agreement *per se*, would not necessarily establish the lack of consent necessary for conversion or that Aileen was not fully informed of the withdrawals. Under the appropriate points of error, I have expressed my opinion that the circumstantial evidence was sufficient to support the jury's findings regarding the allegations of breach of fiduciary duty and conversion as to the withdrawals from the Special Account. I need not revisit these matters here.

### Point 7

In point seven, Aileen's Estate asserts that the trial court erred in refusing to submit jury questions concerning unjust enrichment since such questions were supported by the pleadings and evidence.

The majority did not need to reach this point since it remanded the action for a new trial. I would overrule the point.

The only evidence supporting a restitutionary claim that Michael and Donna were enriched *unjustly* related to Aileen's Estate's claims of breach of fiduciary duty and conversion. There were no allegations that Michael and Donna acquired Aileen's funds by accident or mistake or other wrongdoing. Therefore, these questions were cumulative and unnecessary.

The trial court did not err in failing to submit Aileen's Estate's unjust enrichment questions to the jury. I would overrule point seven.

### Point 8

In point eight, Aileen's Estate complains that the trial court erred in allowing into evidence both the testimony and written report of Tim Winata because such testimony and report were premised entirely upon facts not in evidence, were wholly speculative, and not probative.

The majority did not address this point. I only comment that even if this testimony and evidence were inadmissible, Michael's Estate's and Donna's defense does not rise or fall with it. There was other sufficient circumstantial evidence of some agreement or understanding between Michael and Aileen

427

to sustain the jury's verdict regarding the withdrawals from the Special Account.

### III. Conclusion

I would affirm the trial court's judgment in favor of Michael's Estate as to Aileen's Estate's claims except for Michael's breach of fiduciary duty in making the $83,650 withdrawal from the CMA account. As to that transaction, I would render judgment against Michael's Estate.