Gabriel GONZALEZ and Cristina Gonzalez, Individually and as Next Friends of Maribel Gonzalez, and Edgar Gonzalez, Minors; and Gabriel Gonzalez, Jr., Appellants,

v.

EL PASO HOSPITAL DISTRICT, Operating as R.E. Thomason General Hospital; Texas Tech University Health Sciences Center; Donna Coffman, M.D., and Russell Van Norman, M.D., Appellees.

No. 08–95–00257–CV.

Court of Appeals of Texas,
El Paso.

Feb. 27, 1997.

Evelina Ortega, Caballero & Ortega, L.L.P., John C. Schwambach, Jr., El Paso, for Appellants.

Barbara Wiederstein, Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, John W. McChristian, Jr., Ray, McChristian & Jeans, P.C., Jim Curtis, Kemp, Smith, Duncan & Hammond, El Paso, Melodie

Krane, Assistant Attorney General, Austin, for Appellees.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

LARSEN, Justice.

Plaintiffs in this medical malpractice suit appeal a take-nothing judgment, following jury trial, favoring defendants Russell Van Norman, M.D., El Paso Hospital District operating as R.E. Thomason General Hospital, and Texas Tech University Health Sciences Center, a medical school which employed Dr. Van Norman. We affirm.

### FACTS

Gabriel Gonzalez injured his foot in 1988. He sought treatment at Thomason Hospital after his toe became infected. Van Norman, an orthopedic surgeon employed by Texas Tech University Health Sciences Center and practicing at Thomason, treated Gonzalez. Both Thomason Hospital and Texas Tech are governmental units of the State of Texas. After diagnosing a bacterial infection, Dr. Van Norman prescribed long-term antibiotic treatment requiring the surgical placement of a Hickman catheter below Gonzalez's collarbone. Before Gonzalez's release from the hospital, a nurse instructed him on self-administration of the antibiotics and proper cleaning of the catheter. Approximately two weeks after his release from the hospital, Gonzalez completed his course of antibiotics, and seemed to be recovering well. Van Norman elected not to remove the Hickman catheter, however, in case further antibiotic treatment became necessary.

Less than two weeks later, Gonzalez returned to Thomason's emergency room with uncontrolled trembling. Doctors removed the Hickman catheter and found bacteria on a culture taken from the catheter tip. They diagnosed Gonzalez with septicemia, or blood poisoning, and pneumonia. After a second hospitalization and antibiotic treatment, Gonzalez was again discharged. Several days after his second discharge, Gonzalez suffered a subarachnoid hemorrhage caused by an aneurism in a blood vessel weakened by infection. This "brain bleed" caused cranial nerve damage which has disabled his right side. Gonzalez and his wife, on their own behalf and that of their children, brought suit against Thomason Hospital, Texas Tech, Dr. Van Norman, and others pursuant to the Texas Tort Claims Act.

After trial on the merits, a jury made fault findings against Gonzalez, Thomason, Texas Tech, and Dr. Van Norman. The jury also found that Thomason and Texas Tech did not have actual notice of Gonzalez's claim within the time period required by the Texas Tort Claims Act. Thomason and Texas Tech moved for judgment on the verdict based on lack of notice, and Van Norman moved for judgment notwithstanding the verdict based on TEX.CIV.PRAC. & REM.CODE ANN. § 101.106 (Vernon 1986). The trial court entered judgment in favor of defendants. Plaintiffs appeal.

### DOCTOR'S J.N.O.V. BASED ON JUDGMENT FOR GOVERNMENTAL UNIT

In their Point of Error One, plaintiffs contend that the trial court erred in granting Van Norman judgment not withstanding the verdict based on TEX.CIV.PRAC. & REM.CODE ANN. § 101.106 (Vernon 1986). That statute provides:

A judgment in an action or a settlement of a claim under this [governmental liability] chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

Plaintiffs do not dispute that their claims against the governmental units and Dr. Van Norman involve the same subject matter. Instead, they argue first that Section 101.106 bars judgment against an employee only where judgment is entered *against* the governmental unit. Where judgment is entered for the governmental entity, as here, the Gonzalezes contend that the finding of fault against Dr. Van Norman should support judgment, and that Section 101.106 does not apply. Second, they argue that the simultaneous rendition of judgment against the doc-

tor and his employer is not barred by Section 101.106. We disagree.

The express language of Section 101.106 bars a judgment against a government employee where there is a Tort Claims Act judgment or settlement concerning the same subject matter. *Thomas v. Oldham,* 895 S.W.2d 352, 355 (Tex.1995); *Owens v. Medrano,* 915 S.W.2d 214, 216 (Tex.App.—Corpus Christi 1996, writ denied). The statute does not require that judgment be rendered *against* a governmental unit before the procedural bar applies. To the contrary, several courts of appeals have applied the bar in cases where judgment has been rendered in favor of the governmental unit. *See Brand v. Savage,* 920 S.W.2d 672, 674 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Owens,* 915 S.W.2d at 216. Indeed, two cases have specifically applied the bar to employee liability where judgment for the governmental unit was based on plaintiff's failure to comply with the Tort Claims Act notice requirements, a defense that would not have protected an employee sued individually. *Cox v. Klug,* 855 S.W.2d 276, 280 (Tex.App.—Amarillo 1993, no writ); *Davis v. Mathis,* 846 S.W.2d 84, 88–89 (Tex.App.—Dallas 1992, no writ). Similarly, one court has held that it is immaterial whether judgment against the governmental unit precedes an attempt to recover against the employee, or is simultaneous. *White v. Annis,* 864 S.W.2d 127, 131 (Tex.App.—Dallas 1993, writ denied). The purpose of Section 101.106 is to protect government employees from individual liability for acts or omissions where a claim based upon the same facts is made against their employers under the Texas Tort Claims Act. *Id.* Whether the outcome of the governmental liability claim is favorable or adverse to the plaintiff is not a distinction made by the statute; neither does it differentiate judgments that are simultaneous from those that are not. We therefore conclude that the trial court correctly entered judgment for the employee doctor based upon the jury's failure to find actual notice had been given the doctor's employer. The Gonzalez's first point of error is overruled.

### ACTUAL NOTICE

In their second point of error, plaintiffs urge that the trial court incorrectly defined "actual notice" in the jury charge. In their third point of error, they assert that they established actual notice to Thomason Hospital and Texas Tech as a matter of law. In their fourth point of error, the Gonzalezes challenge the factual sufficiency of the jury's adverse finding on actual notice. As these arguments are related, we will examine them together.

■ In connection with jury questions on whether Thomason and Texas Tech had actual notice of Gonzalez's claims, the trial court defined actual notice as:

> [K]nowledge of the cerebral injury to Gabriel Gonzalez, the alleged or probable fault of [the governmental unit], and the identity of the person injured. Such knowledge must be received or conveyed to an employee of the [governmental unit] with a duty to investigate or evaluate potential claims against [the governmental unit].

Plaintiffs acknowledge that neither Texas Tech nor Thomason Hospital had formal written notice of Gonzalez's claim as contemplated by the Tort Claims Act. Tex.Civ.Prac. & Rem.Code Ann. § 101.101(a)(Vernon 1986). They rely instead upon the actual notice provision of the Act, which states:

> The [formal] notice requirements ... do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged. Tex.Civ.Prac. & Rem.Code Ann. § 101.101(c)(Vernon 1986).

A governmental unit possesses actual knowledge of a claim if it is aware of three things: (1) knowledge of death, injury or property damage; (2) knowledge of the governmental unit's alleged fault in producing or contributing to the death, injury, or damage; and (3) identification of the parties involved. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). Additionally, actual notice may be imputed to the governmental unit only when an agent or representative of the entity charged with a duty to investigate and report to the governmental unit receives the three elements of actual notice outlined in *Cathey. See Dinh v.*

*Harris County Hospital District,* 896 S.W.2d 248 (Tex.App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.)(actual notice is not limited to a particular governmental official, but may be imputed where agent with notice has duty to gather facts and investigate; hospital employees may have such duty); *Texas Tech University Health Sciences Center v. Apodaca,* 876 S.W.2d 402, 412 (Tex.App.—El Paso 1994, writ denied)(legally and factually sufficient evidence to support deemed finding that Texas Tech had actual notice where its doctor employees had notice and prepared incident report for review by risk management department); *Davis v. Mathis,* 846 S.W.2d 84, 87–88 (Tex.App.—Dallas 1992, no writ)(actual notice not imputed where no evidence that bus driver's knowledge of accident was relayed to person with duty to investigate and report, nor where there was no evidence that city police investigation was relayed, nor imputable to, transit district); *Harris County v. Dillard,* 841 S.W.2d 552, 558 (Tex.App.—Houston [1st Dist.] 1992), *rev'd other grounds,* 883 S.W.2d 166 (Tex. 1994)("if notice is received by an agent or representative who has a duty to gather facts and report, the notice is imputed to the government"); *Woomer v. City of Galveston,* 765 S.W.2d 836, 839 (Tex.App.—Houston [1st Dist.] 1988, writ denied)(fact issue where sheriff's lieutenant investigating accident had duty to investigate and implied duty to report to city authorities); *Rosales v. Brazoria County,* 764 S.W.2d 342, 345 (Tex.App.—Texarkana 1989, no writ)(actual notice imputed to county by sheriff's deputies duty to investigate and report facts surrounding accident). We thus conclude that the trial court's definition of "actual notice" correctly stated the applicable law.

■ Moreover, even were we to find that the second part of the trial court's definition was superfluous, we conclude that any error was harmless. Thomason and Texas Tech do not contend that their employees with knowledge of the contents of Gonzalez's medical records had no duty to investigate and evaluate, or at least a duty to refer such knowledge to someone who did. Rather, defendants claim nothing within the records provided notice of their probable fault in causing Gonzalez's severe complications from infection. This is an element of actual notice clearly required under *Cathey.* As discussed below, there is probative evidence upon which the jury could rely in determining that this requirement was not met. Point of Error Two is overruled.

■ We next address plaintiffs' claims that they established actual notice as a matter of law, or alternatively that the jury's failure to find actual notice was against the great weight and preponderance of the evidence. Where a party challenges the legal sufficiency of a failure to find on an issue upon which that party bears the burden of proof, as here, the party must demonstrate that the evidence conclusively established all vital facts in support of the issue, that is, that the matter was established as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *Estate of Townes v. Townes,* 867 S.W.2d 414, 417 (Tex. App.—Houston [14th Dist.] 1993, writ denied). In reviewing a matter of law challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Sterner,* 767 S.W.2d at 690; *Townes,* 867 S.W.2d at 417. If we find no evidence to support the fact finder's answer, we then examine the entire record to see whether the contrary proposition is established as a matter of law. *Id.*

Where a party challenges the factual sufficiency of a failure to find on an issue upon which that party bears the burden of proof, the party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Townes,* 867 S.W.2d at 417; *Lee–Wright, Inc. v. Hall,* 840 S.W.2d 572, 579 (Tex.App.—Houston [1st Dist.] 1992, no writ). A factual sufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Parallax Corp., N.V. v. City of El Paso,* 910 S.W.2d 86, 89 (Tex.App.—El Paso 1995, writ denied). We will not substitute our own conclusions for those of the jury; rather if

competent evidence of probative force supports the finding, we will sustain it. *Parallax Corp.*, 910 S.W.2d at 89. We will not interfere with the jury's resolution of conflicts in the testimony, nor pass on the credibility of the witnesses. *Parallax Corp.*, 910 S.W.2d at 90. Bearing these standards of review in mind, we review the evidence on the issue of actual notice.

The three elements that plaintiffs were required to establish were knowledge of injury, knowledge of alleged fault, and identity of the parties. *Cathey*, 900 S.W.2d at 341. There is no real debate that Thomason and Texas Tech had notice of Gonzalez's injury and identity; rather, issue is joined over whether the governmental units had actual notice of alleged fault in producing or contributing to the injury. In urging that it established this element as a matter of law, the Gonzalezes rely upon the medical records which were undeniably compiled and reviewed by employees of the defendants. We find, however, that there was probative evidence upon which the jury could rely in making a negative finding on notice of alleged fault.

The jury heard evidence that a pseudomonas infection arising from use of a Hickman catheter is unlikely and rare. The infection with which Gonzalez first presented at Thomason is of a type difficult to treat and likely to recur. Several doctors testified that the pseudomonas infection causing his brain bleed may have been a recurrence of the same infection for which Gonzalez was originally treated, and not caused by the catheter at all. There was testimony that in one doctor's opinion, Gonzalez's blood poisoning would not provide notice that a care provider had done something wrong to cause the condition. Based upon this evidence, a jury could reasonably conclude that the recurrence of infection would not put Thomason or Texas Tech on notice of fault in causing the patient's injuries.

Defendants also presented evidence that infection associated with using a Hickman catheter is not so unusual as to necessarily give notice that medical personnel had done something wrong which caused the infection. Dr. Van Norman and Dr. Coffman both testi-fied that infection is a known and recognized risk of using a Hickman catheter. He testified that for a patient to develop infection after discharge from the hospital would not provide notice of a claim against the doctors and nurses who had cared for the patient in the hospital. We conclude that as there is evidence supporting the jury's non-finding on actual notice, plaintiffs did not establish actual notice as a matter of law. We also conclude that the jury's failure to find actual notice was not against the great weight and preponderance of the evidence. Points of Error Three and Four are overruled.

## CONCLUSION

Having found no error in the rulings of the trial court or the findings of the jury, we affirm the judgment.

McCLURE, J., not participating.