UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-10967
_____


In the Matter of KAREN GILLUM,

Debtor.

_____


RANDOLPH ROYAL GILLUM,

Appellant,

v.

KAREN GILLUM,

Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas
(3:00-CV-738-G)
_____
August 7, 2001

Before DAVIS, WIENER and STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

Karen Gillum sued her brother, Randolph Gillum, on various causes of action arising out of their complicated business relationship.  After a trial held in the bankruptcy court, a jury found that Randolph had converted $375,000 in cash and $1.1 million

_____

    [*]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

in accounts receivable belonging to Pioneer Imaging and Diagnosis, Ltd. ("Pioneer"), a partnership between the two siblings. The district court subsequently affirmed these findings. Randolph now appeals, principally contesting the sufficiency of the evidence supporting the two conversion findings by the jury. Because the evidence was sufficient to sustain only one of the conversion findings by the jury, we vacate the judgment of the district court and remand this case for further proceedings.

I.

Karen and Randolph are both doctors with practices in northern Texas. Successful in practice, each was also involved in other business ventures. In particular, Karen gave Randolph $20,000 for a half interest in Texas Summitt Corporation ("TSC"). TSC was involved in a number of businesses operated by Randolph, including construction and real estate. Though Karen bought a half interest in TSC, she owned no TSC stock of any kind. Rather, she relied on her brother's promise that she had a claim to half of TSC's equity.

In 1991 the two siblings formed Pioneer as part of a plan to transfer half of TSC's stock to Karen. Pioneer, a partnership, provided imaging and diagnostic services to plaintiffs in connection with their personal injury lawsuits. Pioneer was capitalized primarily with loans from TSC and leased the equipment used in its business. Karen owned 99% of TSC and Randolph the other 1%. The two siblings intended to expand Pioneer's business and then merge it with TSC. They thought that this plan would

-2-

allow them to avoid the substantial gift taxes Randolph would incur if he simply gave half of TSC's stock to Karen.

In 1994 Randolph made a number of payments to Karen. The nature and purpose of these payments was disputed by the two siblings. The jury determined that Randolph lent Karen $600,000 and that he paid her $1.5 million for half of Pioneer's accounts receivable.[1] At the time Randolph made these payments, Pioneer had $2.4 million of accounts receivable on its balance sheet. At the same time Randolph made these payments in 1994, he--with Karen's consent--also began controlling the operations of Pioneer.[2] He did so until he purchased all of Karen's interest in Pioneer in 1996. The total consideration Karen received in 1996 was a nominal amount of money and release of guarantees of Pioneer's indebtedness.

In 1997 Karen sued Randolph and several other parties in Texas state court, asserting various causes of action. After Karen filed for bankruptcy, she removed the case to the bankruptcy court. The bankruptcy court ultimately tried three of Karen's causes of action against Randolph to a jury. On the first cause of action, for breach of contract, the jury found that while Randolph had promised to give half of the equity of TSC to Karen, he did not breach that

---

[1]Randolph also made a payment to Karen of $110,000 at this time. The jury found that this payment was not a loan to Karen by Randolph. Otherwise, the nature of the payment is unclear.

[2]The record is in fact unclear as to who controlled Pioneer's operations before 1994. Regardless, the parties do not dispute that Randolph controlled Pioneer's operations after his payments to Karen in 1994.

promise. On the second cause of action, for breach of fiduciary duty, the jury found that while Randolph had breached the fiduciary duty he owed Karen with respect to Pioneer, Karen was not damaged by that breach. On the third cause of action, for conversion, the jury found that Randolph had converted $375,000 in cash and $1.1 million in accounts receivable belonging to Pioneer. The jury found that Karen incurred damages of $1.475 million as a result of the conversions by Randolph. The jury also found that Karen sold her interest in Pioneer on March 20, 1996, and that she knew or should have known of the conversion of assets by Randolph on that same date. After denying Randolph's motions for judgment as a matter of law and for a new trial, the bankruptcy court entered judgment for Karen for $875,000 plus interest and costs. The bankruptcy court determined this amount by subtracting the $600,000 Karen still owed Randolph from the jury's damage finding of $1.475 million.

Randolph appealed the judgment of the bankruptcy court to the district court. The district court affirmed the judgment of the bankruptcy court in all respects, finding in particular that there was sufficient evidence to support the jury's findings that Randolph converted both cash and accounts receivable belonging to Pioneer.

Randolph now appeals the judgment of the district court, raising four issues. Randolph argues, 1) that Karen may not sue for conversion of Pioneer's assets when she knew or should have

known of that conversion on the same day she sold her interest in Pioneer to Randolph, 2) that the claim for conversion of Pioneer's assets must be asserted by Pioneer and Karen may not assert this claim on behalf of Pioneer against Randolph, 3) that there is insufficient evidence in the record to show that Randolph converted Pioneer's cash, and 4) that there is insufficient evidence in the record to show that Randolph converted Pioneer's accounts receivable.

## II.

### A.

We begin with the first two issues advanced by Randolph. The record reflects that Randolph did not raise either issue in the bankruptcy court. "It is well established that we do not consider arguments or claims not presented to the bankruptcy court." In Re Gilchrist, 891 F.2d 559, 561 (5th Cir. 1990); see also In Re Fairchild Aircraft Corp., 6 F.3d 1119, 1128 (5th Cir. 1993). As such, we will not pass on the merits of either of the first two issues raised by Randolph.

### B.

We turn next to Randolph's argument that Karen presented insufficient evidence to support the jury's finding that he converted cash belonging to Pioneer. We review the sufficiency of evidence de novo, reviewing all the evidence in the record without making determinations about credibility or the weight of the evidence. Serna v. City of San Antonio, 244 F.3d 479, 481 (5th

Cir. 2001).

Texas law recognizes an action for conversion of cash, so long as the cash is identifiable as a distinct chattel and the conversion action is not simply an action for payment of a debt. Estate of Townes v. Townes, 867 S.W.2d 414, 419 (Tex. App. – Houston [14th Dist.] 1993, writ denied). Otherwise the elements of the action are the same as they would be with other personal property – namely, wrongful exercise of dominion or control over another's property in denial or inconsistent with the rights of others in that property. Id.

In this case, Karen established that Randolph controlled the affairs of Pioneer. She also produced four checks with a total value of $375,000 that Randolph had Pioneer issue to him. When Randolph had these checks issued, Karen still owned 99% of Pioneer. Though there was conflicting evidence on this point, the jury could have concluded that Randolph was not entitled to any distributions of cash from Pioneer. As such, the evidence was sufficient to support the jury's findings that Randolph converted $375,000 in cash belonging to Pioneer.

C.

We turn finally to the sufficiency of the evidence supporting the jury's finding that Randolph converted $1.1 million in accounts receivable belonging to Pioneer. To establish her case, Karen relied on three facts: 1) that Pioneer had $2.4 million in accounts

receivable when Randolph assumed management of Pioneer in 1994, 2) Pioneer collected about $2.1 million between 1994, when Randolph assumed control of the business, and 1996, when Karen sold her interest to him, and 3) Karen never received any proceeds from the accounts and the business was worthless when she sold her interest in 1996.  Karen argues that these facts are sufficient to support the jury's finding concerning Randolph's conversion of accounts receivable.  We disagree.

Randolph is correct that these facts are insufficient to support a finding that he converted Pioneer's accounts receivable. Texas law places the burden on Karen to show that Randolph wrongfully exercised dominion or control over Pioneer's accounts receivable.  Villarreal v. Moreno, 650 S.W.2d 191, 192 (Tex. App. - San Antonio 1983, no writ).  Karen was required to prove more than that Randolph, who controlled Pioneer's business operations with Karen's consent, collected its accounts receivable. She was required to prove that Randolph wrongfully exercised control over those accounts--that is contrary to the rights of Pioneer and Karen.

Pioneer was an operating business with substantial liabilities.  The record reflects that Pioneer had no paid in capital and had trouble making its lease payments on several occasions.  There is no evidence in the record to suggest that collections on Pioneer's accounts were not paid over to its creditors in the normal course of business.  Karen presented no

evidence that Randolph took the proceeds of the accounts for his own use or for any other wrongful use. That Karen received a nominal amount for her interest in Pioneer in 1996 and that she never received proceeds from any of Pioneer's accounts is irrelevant.[3] Karen had no claim on Pioneer's accounts. As an owner of Pioneer, she was only entitled to proceeds from Pioneer's accounts and other assets to the extent they exceeded Pioneer's liabilities. Karen produced no evidence that Pioneer's assets, including the collection from its accounts receivable, exceeded its liabilities.

In sum, except for the cash payments Pioneer made to Randolph discussed above, Karen produced no evidence that Randolph used any of the proceeds from Pioneer's business (including collection from accounts receivable) for any purpose other than to pay Pioneer's legitimate expenses. Accordingly, Karen produced insufficient evidence to support the jury's finding that Randolph converted Pioneer's accounts receivable.

### III.

The evidence produced at trial was sufficient to show only that Randolph converted cash, and not accounts receivable, belonging to Pioneer. We therefore vacate that part of the judgment that represents Karen's recovery on the accounts receivable. Because we are uncertain how this modification of the

---

[3]Karen received considerable value in the form of releases of her guarantees of Pioneer's indebtedness.

judgment will affect Karen's bankruptcy proceeding, we VACATE the judgment of the bankruptcy court and REMAND this case to the bankruptcy court for further proceedings consistent with this opinion.

VACATED AND REMANDED.