Brian SCHEELE and Cindi
Scheele, Appellants,

v.

Steven MURK, M.D. and Gary M.
Flangas, M.D., Appellees.

No. 04–00–00291–CV.

Court of Appeals of Texas, San Antonio.

Feb. 7, 2001.

2

Dale Hicks, Maloney & Maloney, P.C., San Antonio, for appellants.

Cynthia Day Grimes, Christopher J. Deeves, Ruth G. Malinas, Ball & Weed, P.C., San Antonio, for appellees.

Before ALMA L. LÓPEZ, Justice, Catherine STONE, Justice, and SARAH B. DUNCAN, Justice, dissenting without opinion.

ALMA L. LÓPEZ, Justice.

The appellant, Brian Scheele, sustained head and back injuries after falling from a horse. Brian was admitted to the University Hospital where the appellees, Dr. Steven Murk and Dr. Gary Flangas, treated him. Brian and his wife, Cindi, later sued Dr. Murk, Dr. Flangas, and other defendants, for damages they contend resulted from the defendants' negligent treatment of Brian. The Scheeles subsequently nonsuited their claims against the other defendants. Dr. Murk and Dr. Flangas moved for summary judgment on three grounds. The trial judge granted summary judgment in favor of the doctors without specifying the grounds for the order. In this appeal, the Scheeles appeal the trial court's summary judgment order.

■ When reviewing a summary judgment order, the court of appeals must determine whether the summary judgment evidence establishes as a matter of law that no genuine issue of fact exists as to one or more of the essential elements of the plaintiff's cause of action. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether a disputed material fact issue exists, the court of appeals will view evidence favorable to the non-movant as true. *See Nixon*, 690 S.W.2d at 548–49. The reviewing court must indulge every reasonable inference in favor of the non-movant and resolve any doubt in the nonmovant's favor. *Id.* Where the trial judge does not specify the basis of the summary judgment order as in the instant case, the court of appeals must consider all grounds preserved for review, *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996), and uphold the order on any theory advanced that is meri-

torious; *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

## Immunity Defense

◼ The Scheeles originally sued several defendants in addition to the doctors. The other defendants included the University of Texas Health Science Center (UTHSC) and the Bexar County Hospital District (BCHD). UTHSC obtained summary judgment based on sovereign immunity under the Texas Tort Claims Act (the Act). In response, the doctors moved for summary judgment pursuant to section 101.106 of the Texas Practices and Remedies Code, arguing that the Scheeles' claims were barred by the earlier judgment because they were employees of UTHSC. When a defendant moves for summary judgment based on an affirmative defense, the defendant must prove conclusively all elements of the defense as a matter of law such that no genuine issue of material fact exists. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995).

◼ Section 101.106 provides that "[a] judgment in an action or a settlement of a claim [under the Texas Tort Claims Act] bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." TEX.CIV. PRAC. & REM.CODE § 101.106 (Vernon 1997). As a result, the judgment in favor of UTHSC would bar an action against Dr. Murk and Dr. Flangas if they were employees of UTHSC at the time they treated Brian. The Act defines employee as "a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks

the details of which the governmental unit does not have the legal right to control." *Id.* § 101.001(*l*). To prove that Dr. Flangas was employed by UTHSC, the doctors presented Dr. Flangas's Graduate Medical Training Agreement. That agreement provided that "[p]ursuant to Chapter 59 of the Texas Education Code as amended, the Center [UTHSC] agrees to make available to the District [BCHD] medical professional liability insurance coverage for residents of the District in exchange for reimbursement for the cost of such coverage." In response to this evidence, the Scheeles presented evidence that Dr. Flangas was an employee of the BCHD. Specifically, the Scheeles presented George Hernandez's[1] deposition testimony stating that the BCHD did business as the University Health System and that BCHD was Dr. Flangas's employer for tax purposes, Dr. Flangas's Graduate Medical Training Agreement indicating Dr. Flangas's position as a House Staff Physician receiving an annual stipend from the University Health System, Dr. Flangas's W 2 identifying his employer as the BCHD, a worker's compensation claim filed by Dr. Flangas showing the Owner/Department as University Health Systems, leave forms indicating that Dr. Flangas's position was funded by the BCHD, and evidence that the BCHD reimbursed UTHSC for medical malpractice insurance for Dr. Flangas. Viewed in favor of the non-movant for summary judgment, this evidence raises a genuine issue of fact about what entity employed Dr. Flangas. *See Nixon*, 690 S.W.2d at 548–49. As a result, summary judgment based on section 101.106 in regard to Dr. Flangas would have been improper.

◼ As for Dr. Murk, the Scheeles do not disagree that Dr. Murk was employed by UTHSC. Instead, the Scheeles argue

1. George Hernandez is a lawyer and vice president for legal services for the BCHD.

that section 101.106 does not apply to Dr. Murk because he is "a person who performs tasks the details of which the governmental unit does not have the legal right to control." *Id.* § 101.101(*l*) (defining "employee"). Section 101.106's bar does not apply to such a person, because such a person does not fall into the definition of "employee." To prove that section 101.106 applied to Dr. Murk, the doctors presented evidence showing that Dr. Murk was employed by UTHSC: specifically, an Affiliation Agreement stating that UTHSC shall provide overall direction for services rendered to patients of the hospital; deposition testimony from Dr. Murk explaining that UTHSC exercised control over his neurological practice; and a deposition in which Dr. Walsh, the Associate Dean of UTHSC Medical School, testified that Dr. Murk could be terminated for conducting a procedure he had been instructed not to perform.

In addition to presenting this evidence, the doctors argue that it is absurd to conclude that a professional hired by the government cannot be an employee of the governmental unit. The doctors rely in part on the court of appeals' decision in *Darensburg v. Tobey.* In *Darensburg*, the court of appeals determined that a doctor was an employee rather than an independent contractor, notwithstanding the existence of a doctor's independent medical judgment. *See Darensburg v. Tobey,* 887 S.W.2d 84, 89 (Tex.App.—Dallas 1994, writ denied). Notably, the court was not asked to decide whether a doctor was "a person who performs tasks the details of which the governmental unit does not have the legal right to control" for the purposes of the Act. Instead, the court considered whether a doctor was an employee for the purposes of a workers' compensation claim. As a result, the court of appeals' determination in *Darensburg* is not dispos-

itive of the question of Dr. Murk's immunity.

Likewise the doctors' reliance on the decision in *Siders v. State* is not dispositive of whether UTHSC had the legal right to control the details of tasks performed by Dr. Murk. *See Siders v. State,* 970 S.W.2d 189 (Tex.App.—Dallas 1998, pet. denied). In *Siders,* the same court of appeals determined that engineers who designed a highway construction project were employees of the State. But as in *Darensburg,* the court did not address whether a doctor employed by a governmental entity is "a person who performs tasks the details of which the governmental unit does not have the legal right to control." Even where courts have addressed the applicability of section 101.106 to doctors, no court has decided that a governmental unity has the legal right to control the details of tasks performed by a doctor. *See Dallas County Mental Health and Mental Retardation v. Bossley,* 968 S.W.2d 339, 343–44 (Tex. 1998) (considering scope of section 101.106 without considering how employee is defined in section 101.001(*l*)); *Gonzalez v. El Paso Hosp. Dist.,* 940 S.W.2d 793, 795 (Tex.App.—El Paso 1997, no pet.) (determining that section 106.106 bars actions against employees of governmental entities if judgment is rendered either for or against the governmental entity, but not addressing whether the employer hospital could control the details of employee-doctor's tasks); *Cox v. Klug,* 855 S.W.2d 276, 280 (Tex.App.—Amarillo 1993, no pet.) (finding section 101.106 barred plaintiff's claim against doctor, but not questioning whether doctor was employee under section 101.101(*l*) of the Act). Accordingly, we look to see if the Scheeles presented a scintilla of evidence that raises a question of genuine material fact about whether Dr. Murk is "a person who performs tasks the details of which the governmental unit does not have the legal right to control."

To address this question, the Scheeles relied on deposition testimony from Dr. Murk and Dr. Walsh to raise a fact question about whether UTHSC controlled the details of Dr. Murk's practice of neurosurgery. Although Dr. Murk insisted that UTHSC controlled his practice of neurosurgery, he admitted that he made decisions concerning patient care based on his professional medical judgment, that he exercised clinical judgment about surgical decisions when operating on patients, and that he exercised independent clinical judgment when prescribing medications. In addition, Dr. Walsh stated during his deposition that to exercise control at some level would be absurd and that neurosurgeons must make treatment decisions based on their best clinical judgment. This evidence raises a fact question about whether UTHSC controlled the details of Dr. Murk's work. As a result, summary judgment based on section 101.106 in regard to Dr. Murk would have been improper. *See Nixon,* 690 S.W.2d at 548–49.

### Causation

 In their petition, the Scheeles complain that Brian would not be paraparetic [2] if the doctors had operated to decompress Brian's spine during the first seven days after his injury. To prevail on a medical malpractice claim like this one, a plaintiff must prove that: (1) the defendant-physician had a duty to act according to certain standards, (2) the physician breached that standard of duty, (3) the plaintiff was injured, and (4) the breach caused the plaintiff's injury. *Hicks v. Canessa,* 825 S.W.2d 542, 543 (Tex.App.— El Paso 1992, no writ). In Texas, a plaintiff is barred from recovery for medical malpractice where the doctor's breach deprived the plaintiff of only a 50% or less chance of avoiding the ultimate harm.

*Kramer v. Lewisville Memorial Hospital,* 858 S.W.2d 397, 400 (Tex.1993).

In this case, the doctors argued in their motion for summary judgment that the evidence proved that Brian only had a 50% chance of improving. Specifically, the doctors relied on the deposition testimony of Dr. Murk and Dr. Rutberg. Dr. Murk testified that the risk of operating on Brian during the first seven days outweighed the potential long-term benefits. Dr. Murk explained that he did not believe it was reasonable to operate on Brian because no reasonable hope existed that Brian would regain neurological function in his lower extremities.

In his deposition, Dr. Rutberg explained that Brian had undergone decompression surgery five months after his injury to relieve pressure on his spinal cord. The doctor explained that since the surgery, Brian had improved so that he could be up on parallel bars and that he could walk in a pool of water, but that he would never be able to walk outside a pool. To improve his neurological outlook, Dr. Rutberg opined that Brian should have undergone the surgery seven days after he was admitted to the hospital. When questioned about Brian's chance of improvement, the doctors' attorney was initially able to pin Dr. Rutberg down to a "50/50 chance" of improvement had surgery been done within the first seven days, but the doctor ultimately stated that Brian would have had a 60% percent chance, or a "better than even chance that he would have walked" with some type of assistance, had he received the surgery within the first seven days. A better than even chance is more than a 50% chance of avoiding the ultimate harm. *Kramer,* 858 S.W.2d at 400. As a result, summary judgment based on the doctors' argument that the

---

**2.** The Scheeles' expert defined this term as "weakness in his legs."

evidence proved that Brian had only a 50% chance of improving would have been an error.

### Dr. Flangas's No–Breach Grounds

■ Dr. Flangas moved for summary judgment on a third ground—specifically, that he had not breached a standard of care that he owed Brian, and that he did not cause Brian's injuries, because he did not have authority to perform the decompression surgery. To prove these contentions, Dr. Flangas relied on his deposition testimony that he had only an institutional license and that he could only perform surgical procedures authorized by, and under the supervision of, a licensed physician. The Scheeles' expert, Dr. Rutberg, agreed that the authority to perform surgery resides with the hospital staff and not the resident, and that a resident could not perform the surgery without the approval of the supervising physician. The doctors also relied on Dr. Murk's testimony that *he* decided not to perform the decompression surgery. The Scheeles, however, contend that, in making this argument, Dr. Flangas has misconstrued the nature of the medical malpractice claim.

The Scheeles argue that notwithstanding his inability to make an independent decision to operate, the applicable standard of care required Dr. Flangas to: (1) be aware of the medical complications associated with retropulsed bone fragments and to recognize the need for their removal in Brian's spinal cord; (2) recommend removal of the retropulsed bone fragments to Dr. Murk, and if Dr. Murk refused to authorize their removal, then to advise the Chief of the Neurosurgery Division at the hospital about the need to remove the fragments; and (3) advise Brian and his

family of the presence of bone fragments and offer them the opportunity to elect to have them removed. The Scheeles supported this proposition with an affidavit from Dr. Rutberg wherein Dr. Rutberg attested as stated above.[3] The Scheeles argue further that Dr. Flangas breached his duty to Brian by failing to recommend decompression surgery. The Scheeles supported this position by deposition testimony from Cindi and Brian's mother that Dr. Flangas advised them that Brian should not have the surgery. Brian maintains that this evidence clearly establishes that Dr. Flangas had a duty to recommend the surgery and that his failure to do so caused his injury.

Viewed in favor of the non-movant, Brian's evidence raises a genuine issue about the applicable standard of care that Dr. Flangas owed Brian; that is, did Dr. Flangas have a duty to recognize the need for removal of retropulsed bone fragments in Brian's spinal cord? This question is material because it is dispositive of those that follow from it: If Dr. Flangas had a duty to recognize the need for the removal of retropulsed bone fragments from Brian's spinal cord, did he have a duty to recommend removal of the bone fragments to Dr. Murk? If Dr. Flangas was required to recommend the surgery to Dr. Murk, and if Dr. Murk refused to authorize the surgery, was Dr. Flangas required to advise the Chief of the Neurosurgery Division about the need to remove the fragments? Considering Dr. Murk's testimony that his own decisions could be vetoed by members of the hospital staff, the answer to this question leads to the next: Did the nonoccurrence of these actions result in Brian's injury? On the other hand, if Dr. Flangas was not required to recognize the need for

---

**3.** The trial judge struck the other portions of the affidavit in response to the doctors' objec- tions.

the removal of retropulsed bone fragments from Brian's spinal cord, or to recommend surgery to remove bone fragments, did he breach a duty to Brian by failing to recommend the surgery? The doctors' evidence does not address the standard of care that Dr. Flangas owed Brian. Because these issues of material fact exist, summary judgment in favor of Dr. Flangas on the grounds that he could not perform the decompression surgery without authorization would have been error. *Nixon,* 690 S.W.2d at 548–49.

### Conclusion

The doctors moved for summary judgment on three grounds. Although the trial court did not specify the grounds for its summary judgment order, we have determined that granting summary judgment on any of the three grounds would have been error. As a result, we reverse the judgment of the trial court and remand the cause for further proceedings.