COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )

                                                                              )              No.  08-01-00440-CV

                                                                              )

                                                                              )                 Appeal from the

                                                                              )

IN THE
MATTER OF W.J.W., A Juvenile.           )             
327th District Court

                                                                              )

                                                                              )         
of El Paso County, Texas

                                                                              )

                                                                              )                   (TC# 17,236)

                                                                              )

 

O
P I N I O N

 

W.J.W., a
juvenile, appeals his commitment to the Texas Youth Commission.  On appeal, he challenges the legal and
factual sufficiency of the juvenile court=s
findings.  We affirm.

On May 9, 2000,
W.J.W. was found to have engaged in delinquent conduct by committing the
offense of Criminal Trespass.  After a
disposition hearing, W.J.W. was placed on supervised probation with the El Paso
County Juvenile Probation Department.  On
September 5, 2000, the juvenile court found that W.J.W. had violated the terms
of his probation in July 2000 by running away from home.  After a disposition hearing, the juvenile
court placed W.J.W. in an out-of-home placement at the Campbell-Griffin
Residential Treatment Center.








On February 6,
2001, at a modification hearing, the juvenile court found that W.J.W. was
unsuccessfully discharged from the Campbell-Griffin facility.  The Juvenile Probation Department recommended
that W.J.W. be placed in an out-of-home placement at Meadow Pines Residential
Treatment Center and the juvenile court judge ordered that placement on March
15, 2001.  While at the Meadow Pines
facility, W.J.W. was charged with and adjudicated on May 3, 2001 with having
committed the offense of Indecent Exposure, Class AB@ misdemeanor.  The disposition was transferred to El Paso
County and a disposition hearing was held on June 1, 2001.

At the June 1,
2001 disposition hearing, the juvenile court ordered that W.J.W. be placed in
the Grayson County Boot Camp Sex Offender Treatment Center.  On August 16, 2001, the State filed a motion
to modify disposition, alleging that W.J.W. had been unsuccessfully discharged
from the sex offender treatment program for noncompliance with the rules and
regulations of the facility.  At a
contested modification hearing held on September 5, 2001, the juvenile court
found that W.J.W. had violated at least one of the terms of his probation.  At a disposition hearing on September 20,
2001, the juvenile court heard testimony from witnesses and ordered that W.J.W.
be committed to the Texas Youth Commission. 
The juvenile court=s
modification-disposition order contains the findings for the disposition as
required under Sections 54.04(i) and 54.05(i) of the Texas Family Code.  W.J.W. now brings this appeal.

In two issues,
W.J.W. contends that the evidence is legally and factually insufficient to
support the juvenile court=s
order that he be committed to the Texas Youth Commission.  Specifically, W.J.W. asserts that the court=s findings that reasonable efforts were
made to prevent or eliminate the need for the child=s
removal from the home and that no community-based intermediate sanction is
available to adequately address the needs of the juvenile or to adequately
protect the needs of the community are not supported by the evidence.








Before a juvenile
court can modify disposition to place a child on probation outside the child=s home or to commit the child to the
Texas Youth Commission, that court must state sufficient reasons, including but
not limited to those stated in Section 54.04(i) of
the Family Code, to justify such a decision.[1]  Tex.Fam.Code
Ann. ' 54.04(i)(Vernon 2002); In the Matter
of L.R., 67 S.W.3d 332, 337 (Tex.App.--El Paso
2001, no pet.).  Therefore, on appeal a
juvenile may challenge both the juvenile court=s
finding that he violated a term or condition of probation and the reasons for
the disposition stated in the order pursuant to Sections 54.04(i), a disposition hearing, and 54.05(i),
a hearing to modify disposition.[2]  Tex.Fam.Code
Ann. '' 54.04(i), 54.05(i); L.R., 67 S.W.3d at 337.

Standard
of Review








Juvenile courts
are vested with broad discretion in determining the suitable disposition of
children found to have engaged in delinquent conduct, and this is especially
true in hearings to modify disposition.  L.R., 67 S.W.3d at 338.  Absent an abuse of discretion, we will not
disturb the juvenile court=s
determination.  Id.  In conducting this review, we apply a
two-pronged analysis:  (1) Did the trial
court have sufficient information upon which to exercise its discretion; and
(2) did the trial court err in its application of discretion?  L.R., 67 S.W.3d at
338.  The traditional sufficiency
of the evidence review, articulated below, comes into play when considering the
first question.  Id.  The reviewing court then proceeds to
determine whether, based on the elicited evidence, the trial court made a
reasonable decision or whether it is arbitrary and unreasonable.  Id. 
The question is not whether, in the opinion of the reviewing court, the
facts present an appropriate case for the trial court=s
action, but whether the court acted without reference to any guiding rules and
principles.  Id.  The mere fact that a trial judge may decide a
matter within his discretionary authority in a different manner than an
appellate judge in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  L.R., 67 S.W.3d at 339.

In considering the
legal insufficiency point, we consider only the evidence that tends to support
the jury=s
findings and disregard all evidence and inferences to the contrary.  Lindsey v. Lindsey,
965 S.W.2d 589, 591 (Tex.App.--El Paso 1998, no
pet.).  If more than a scintilla
of evidence exists to support the questioned finding, the legal insufficiency
point fails.  Id.  








In reviewing W.J.W.=s
factual sufficiency challenge, we examine all of the evidence in determining
whether the finding in question is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. 
In the Matter of M.A.C., 999 S.W.2d 442, 446 (Tex.App.--El Paso 1999, no pet.); Lindsey, 965
S.W.2d at 591.  We may not pass
upon the witnesses=
credibility nor substitute our judgment for that of the jury, even if the
evidence would clearly support a different result; rather, if competent
evidence of probative force supports the challenged finding, we will sustain
it.  Gonzalez v. El
Paso Hosp. Dist., 940 S.W.2d 793, 796-97 (Tex.App.--El
Paso 1997, no pet.).

Sufficiency
of the Evidence

W.J.W. does not
challenge the juvenile court=s
determination that he violated a reasonable and lawful order of the juvenile
court.  Instead, he challenges the legal
and factual sufficiency of the court=s
findings, specifically, Athat
reasonable efforts were made to prevent or eliminate the need for the child=s removal from the home@ and Athat
no community-based intermediate sanction is available to adequately address the
needs of the juvenile or to adequately protect the needs of the community.@ 
W.J.W. argues that the probation department failed to explore other
alternative treatment programs and options available in the community that
would have been better suited to his individual needs than placement at the
Texas Youth Commission.

At the September
20, 2001 disposition hearing, the State called one witness to testify,
Ms. Liliana Manqueros,
W.J.W.=s
probation officer.  She recommended that
W.J.W. be placed in the care, custody, and control of the Texas Youth
Commission.  With respect to W.J.W.=s
home, Ms. Manqueros testified that his biological
parents were divorced in 1988, at which time his father was reportedly using
controlled substances and alcohol and had physically abused W.J.W.=s mother in front of the children.  W.J.W.=s mother relocated to El Paso from
Austin and remarried in 1990.  W.J.W.=s
mother encountered problems in the second marriage due to the stepfather=s alcohol abuse and physical aggression
towards her.  W.J.W.=s mother was presently residing in a
battered women=s
shelter.








In the
modification-disposition report entered into State=s
evidence, Ms. Manqueros stated that W.J.W.=s
mother has had problems with W.J.W.=s
behavior since he was age five.  He has
been defiant and has displayed aggressive behaviors toward his sisters.  W.J.W.=s mother sought assistance through
various programs, however, W.J.W.=s
behavior worsened.  Every method of
discipline, including verbal reprimands, removal of privileges and physical discipline, was ineffective as W.J.W. continued to
misbehave.  W.J.W.=s mother finally sent W.J.W. to live
with his biological father in 1996. 
W.J.W.=s
father reportedly was still abusing drugs, was homeless, and taught W.J.W. to
steal and panhandle.  It was also
reported that W.J.W.=s
father sexually abused W.J.W. for approximately one year.  Child Protection Services took W.J.W. into
custody and transferred him to El Paso.








Ms. Manqueros testified that several efforts had been made to
rehabilitate W.J.W. at home.  She stated
that her department had attempted to provide W.J.W. with supervision in the
home, home-based intervention services through the First Offenders Program, and
supervised probation.  In addition,
W.J.W. had been provided with three out-of-home placements and two therapeutic
foster care placements, but remained unresponsive to any of the department=s efforts.  Ms. Manqueros
stated that the department did not examine other alternatives to commitment at
Texas Youth Commission because the department believed that it had exhausted
its resources.  Ms. Manqueros
explained that the department had provided W.J.W. with every type of treatment
the department was capable of providing, which included foster care,
therapeutic care, residential care, psychiatric care, and a boot camp setting,
to all of which W.J.W. had not been receptive. 
Ms. Manqueros also stated that Dr. Barrientos, who conducted a psychological evaluation of
W.J.W., recommended that W.J.W. be placed outside of the home in a structured
program of psychiatric care, behavior modification, and continue his education,
all of which Texas Youth Commission could provide, along with recreational,
vocational, and adult living skills services.[3]

On
cross-examination, Ms. Manqueros testified that
W.J.W. remained in the home for approximately one month after his first
adjudicated offense during which time he continued to defy his mother and then
ran away from home.  According to the
September 5, 2000 modification-disposition report on the incident which was
submitted as State=s
evidence, W.J.W. had an extensive history of running away and was experiencing
discord between himself and his stepfather. 
At the time, W.J.W.=s
mother felt that he needed a structured facility as she could no longer address
his issues and had already tried many out-patient resources.

Ms. Manqueros admitted that after W.J.W. was taken out of the
home, the department did not consider placing him back at home, though W.J.W.
requested that he would like to go back. 
The department considered, but did not recommend, therapeutic foster
care because they felt that with W.J.W.=s constant defiance within a controlled
structured setting without improving any of his behaviors, he was in need of a
more intensive level of care.  Ms. Manqueros also stated that W.J.W. was offered two
therapeutic foster placements prior to coming on to probation and both
placements had failed.








The department had
attempted to reunify W.J.W. with his family through family therapy via
teleconference while he was at the Campbell-Griffin Residential Treatment, but
the effort was unsuccessful.  There was
also an attempt while W.J.W. was at the Meadow Pines Residential Treatment
Center.  Ms. Manqueros
testified that there was no option available in which W.J.W. could be placed in
a controlled environment for psychiatric care in El Paso or through the
Juvenile Probation Department.  She
further stated that there was no type of individual counseling that W.J.W.
could receive in El Paso at the level of care he needed, but that Texas Youth
Commission could provide this option.

W.J.W. offered his
own testimony at the September 20, 2001 disposition hearing.  W.J.W. testified that he no longer had drug
and alcohol abuse problems.  W.J.W.
explained that he had some problems with behavior during the therapeutic foster
care program prior to probation, but nothing major.  W.J.W. denied threatening his foster care
families.  With respect to family
reunification, W.J.W. stated that he and his mother never received counseling
together at the Campbell-Griffin facility, but he did have one request at the
Meadow Pines facility.  When questioned
about the probation department=s
recommendation, W.J.W. stated that he did not think he needed to go to the
Texas Youth Commission facility because he knew he could be good.  Further, he stated that he still had some
problems managing his anger, but he was trying to work it out.  W.J.W. thought a foster home or other
placement and therapy offered locally would help him.  He also thought more contact with his mother
would help him overcome his problems.








We have considered
all of the evidence in the instant case, and given the evidence detailed above,
we find that there was sufficient evidence to support the juvenile court=s findings that the probation
department made reasonable efforts to prevent or eliminate the need for W.J.W.=s removal from his home.  There is ample evidence that the probation
department offered an array of services in an attempt to rehabilitate W.J.W.=s
behavior.  W.J.W.=s probation officer also offered
sufficient evidence that at this time there is no community-based intermediate
sanction available that would adequately address all of W.J.W.=s needs.  Further, we find that the juvenile court=s order of commitment and findings are
not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
Finding no abuse of discretion, we overrule Issues One and Two and
affirm the judgment of the trial court.

 

 

 

October
31, 2002

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Section 54.04(i) provides in pertinent part:

 

(i)         If the
court . . . commits the child to the Texas Youth Commission, the court:

(1)        shall include in its order its
determination that:

(A) 
it is in the child=s
best interests to be placed outside the child=s
home;

(B) 
reasonable efforts were made to prevent or eliminate the need for the
child=s removal
from the home and to make it possible for the child to return to the child=s home; and

(C) 
the child, in the child=s
home, cannot be provided the quality of care and level of support and
supervision that the child needs to meet the conditions of probation . . . .

Tex.Fam.Code Ann. '
54.04(i)(1).





[2]
Section 54.05(i) provides:  AThe
court shall specifically state in the order its reasons for modifying the
disposition and shall furnish a copy of the order to the child.@ 
Tex.Fam.Code Ann. ' 54.05(i).  Further, Section 54.04(f) also requires
that:  AThe
court shall state specifically in the order its reasons for the disposition and
shall furnish a copy of the order to the child. 
If the child is placed on probation, the terms of probation shall be
written in the order.@  Tex.Fam.Code Ann. ' 54.04(f).





[3]
Specifically, Dr. Barrientos=
September 17, 2001 psychological evaluation of W.J.W., which was submitted into
evidence states, AW.J.W. is
an emotionally and behaviorally disturbed adolescent who is in need of both
psychiatric treatment and a high degree of supervision and structure.  Since his home life appears to be in chaos,
it is recommended that he be placed outside the home in a structured program of
psychiatric care, behavior modification, and continued education.@